IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MMI REALTY SERVICES, INC., | ) | Civ. No. 07-00466 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT WESTCHESTER |
| | ) | SURPLUS LINES INSURANCE |
| WESTCHESTER SURPLUS LINES | ) | COMPANY'S MOTIONS FOR |
| INSURANCE COMPANY, et al., | ) | PARTIAL SUMMARY |
| | ) | JUDGMENT (1) AS TO MOLD |
| Defendants. | ) | COVERAGE AND |
| | ) | (2) REGARDING NECESSARY |
| _____ | ) | REPAIRS |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT (1) AS TO MOLD
<u>COVERAGE AND (2) REGARDING NECESSARY REPAIRS</u>

Before the Court are two motions for partial summary judgment brought by Defendant Westchester Surplus Lines Insurance Company ("Westchester") seeking orders declaring that (1) "the subject insurance policy unambiguously limits Westchester's liability for all claims arising directly or indirectly from mold to the total sum of $15,000 on an annual aggregate basis" and (2) "Westchester is not obligated to pay more than the amount actually spent that was necessary to repair or replace property that was lost or damaged by the flood." The Court heard these motions on October 17, 2008. After careful consideration of the motions, the supporting and opposing memoranda, and the arguments of

counsel, Westchester's motions are hereby GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

This insurance coverage dispute arises out of the flooding of Kahala Mall after severe rain storms in March 2006. At that time, Kahala Mall was insured under a Policy issued by Westchester to the Mall's property manager, Plaintiff MMI Realty Services, Inc. ("MMI"). (Def.'s Mold Coverage Concise Statement, Ex. A at Bates Stamp 03213-16.)

The Policy, which was effective from June 1, 2005 to June 1, 2006, covers "direct physical loss of or damage to" Kahala Mall. (Id. at Bates Stamp 03223.) The Policy provides limited coverage for "fungus," which "include[s] mold." (Id. at Bates Stamp 03236, 03256.) The limited coverage exists for mold that "is the result of [flood] that occurs during the policy period" and "only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence." (Id. at Bates Stamp 03256.) Under such conditions, Westchester will pay up to $15,000 "for loss or damage by [mold]," which includes:

    a.    Direct physical loss or damage to [Kahala Mall] caused by [mold], including the cost of removal of the [mold];
    b.    The cost to tear out and replace any part of the

      building or other property as needed to gain access
      to the [mold]; and
  c. The cost of testing performed after removal, repair,
    replacement or restoration of the damaged property
    is completed, provided there is a reason to believe
    that [mold is] present.

(Id. at Bates Stamp 03256.)

  Under this limited coverage for mold, $15,000 "is the most [Westchester] will pay for the total of all loss or damage arising out of all occurrences of . . . [f]lood which take place in a 12-month period." (Id. at Bates Stamp 03256.) Additionally, "[i]f there is a covered loss or damage to [Kahala Mall] not caused by [mold], loss payment will not be limited by the terms of [mold] Limited Coverage, except to the extent that [mold] causes an increase in the loss." (Id. at Bates Stamp 03257.) "Any such increase in the loss will be subject to the terms of" the $15,000 limit for mold coverage. (Id. at Bates Stamp 03257.)

  The Policy provides "Replacement Cost" coverage, under which Westchester will pay no more than the least of either:

  (1) The Limit of Insurance applicable to the lost or
    damaged property;
  (2) The cost to replace the lost or damaged property
    with other property:
    (a) Of comparable material and quality; and
    (b) Used for the same purpose; or
  (3) The amount actually spent that is necessary to
    repair or replace the lost or damaged property.

(Def.'s Necessary Repairs Concise Statement, Ex. A at Bates Stamp 003213, 03236.)

After the March 2006 flood, MMI submitted written claims under the Policy to Westchester totaling more than $2.97 million.  (Def.'s Mold Coverage Concise Statement, Ex E.)  In response, Westchester notified MMI that "several aspects of the claim . . . are in question" and sought to resolve the disputes through the Policy's appraisal process.  (Def.'s Mold Coverage Concise Statement, Ex. F at 5-6, Ex. G at 1.)  After Westchester paid only $1.23 million on MMI's claim, MMI brought this action against Westchester "for all unpaid claims submitted and covered by the Policy."  (Complaint at 4.)

On October 19, 2007, Westchester filed a motion to compel the appraisal process under the Policy.  On December 12, 2007, Magistrate Judge Kevin S.C. Chang ruled that "the amount of lost percentage rent and the amount of loss for the property damage shall be submitted for appraisal" and stayed the case as to those issues.[1]  (Order Granting In Part and Denying In Part Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings Pending Arbitration (12/12/2007) at 17.)  Judge Chang expressly ruled that "the appraisal panel should not consider" disputes regarding causation, coverage, and liability.  (Id. at 13.)

---

[1] The appraisal hearing is currently scheduled for December 2008.  (Plf.'s Necessary Repairs Opp. at 6.)

STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

I.   MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO MOLD COVERAGE

In its motion for partial summary judgment as to mold coverage, Westchester argues that "the Policy unambiguously limits any recovery for mold-

related claims." MMI counters that the policy is ambiguous and that questions of fact as to estoppel and specific cost items preclude summary judgment.

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (Haw. 1994). An insurance policy must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. Id. at 121, 883 P.2d at 42; see also Haw. Rev. Stat. § 431:10-237. Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguity must be resolved against the insurer. Dawes, 77 Haw. at 121, 883 P.2d at 42. Stated differently, insurance policies must be construed in accordance with the reasonable expectations of a layperson. Id.

The Policy at issue contains "Limited Coverage for [Mold]." (Def.'s Mold Coverage Concise Statement, Ex. A at Bates Stamp 03251, 03256.) Under the Policy's plain language, this $15,000 limited coverage exists where (1) the mold results from flood and (2) "all reasonable means were used to save and preserve the property from further damage." (Id. at Bates Stamp 03256.) Under these circumstances, the Policy provides up to $15,000 of coverage for: (1) direct physical loss or damage to Kahala Mall caused by mold, (2) the cost to tear out and

replace any part of the property as needed to gain access to the mold, and (3) the cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed if there is a reason to believe that mold is present. (Id.) This language is clear on its face and provides coverage up to $15,000 for these specific losses and costs.

The Policy goes on to explain that, where "there is a covered loss or damage . . . not caused by [mold], loss payment will not be limited by the terms of this Limited Coverage, except to the extent that [mold] causes an increase in the loss." (Id. at Bates Stamp 03257.) In that case, "any such increase in the loss will be subject to the terms of this Limited Coverage." (Id.) In other words, where mold does not cause the "loss or damage" but "causes an increase in the loss," that increase is governed by the $15,000 limit.

MMI contends this Policy language is ambiguous, arguing it "paid for a $5,000,000 flood policy, and reasonably expected, based upon the Policy's language, that all damages caused by a flood, and not caused by mold, would be covered and not limited to $15,000." (Plf.'s Mold Coverage Opp. at 10.) This is exactly what the Policy's plain language says, and the Policy is not ambiguous. See Oahu Transit Servs., Inc. v. Northfield Ins. Co., 107 Haw. 231, 236 n.7, 112 P.3d 717, 722 n.7 (Haw. 2005) ("Ambiguity exists . . . only when the policy taken

as a whole, is reasonably subject to differing interpretation."). Indeed, where damage is caused by flood and "not caused by [mold]," coverage is not limited to $15,000. (Def.'s Mold Coverage Concise Statement, Ex. A at Bates Stamp 03257.)

MMI also contends that genuine issues of material fact preclude summary judgment. Specifically, MMI argues that (1) "questions of material facts surround the estoppel issues" regarding "Westchester's conduct during the flood repair process" and (2) "questions of fact remain as to specific cost items." (Plf.'s Mold Coverage Opp. at 7-8.) Even if there exist questions of fact regarding these issues, they in no way affect this Court's ability to interpret the Policy as a matter of law.

Accordingly, Westchester's motion for partial summary judgment as to mold coverage is granted to the extent it seeks an order declaring that coverage for loss or damage caused by mold is limited to $15,000 and covers the cost to tear out and replace part of the building if needed to gain access to mold, the cost of testing performed after restoration of the property if there is reason to believe mold is present, and any increase in loss caused by mold. Dawes, 77 Haw. at 121, 883 P.2d at 42. The motion is denied in all other respects.

II. MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING NECESSARY REPAIRS.

In its motion for partial summary judgment regarding necessary

repairs, Westchester seeks a declaration that "'amount of loss,' as respects building damage, shall not exceed the amount actually spent that was <u>necessary</u> to repair or replace the damaged property." (Def.'s Necessary Repairs Motion at 8 (emphasis in original).)  MMI argues that the appraisers are not permitted to decide whether damage was caused by flood or mold. (Plf.'s Necessary Repairs Opp. at 6.)

The Policy provides "Replacement Cost" coverage that is limited to "the least of" either (1) the policy limit, (2) the cost to replace the property with other property that is of comparable material and quality and that is used for the same purpose, or (3) the "amount actually spent that is necessary to repair or replace the lost or damaged property." (Def.'s Necessary Repairs Concise Statement, Ex. A at Bates Stamp 032636.)  Westchester's motion focuses on the third option.

The parties do not dispute the interpretation of the third option above. In fact, MMI states it "agrees that the appraisers can ascertain 'the amount actually spent that is necessary to repair or replace the lost or damaged property' at the mall." (Plf.'s Necessary Repairs Opp. at 6.)  MMI is concerned that the appraisers might decide what caused the damage, but Judge Chang's order expressly prohibited them from determining causation. (Order Granting In Part and Denying In Part Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings

Pending Arbitration at 13.)

Accordingly, under the Policy's plain language, Westchester's motion for partial summary judgment regarding necessary repairs is granted to the extent it seeks an order declaring that, consistent with the plain language of the Policy, MMI may recover from Westchester "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property." Dawes, 77 Haw. At 121, 883 P.2d at 42.  The motion is denied in all other respects.

## CONCLUSION

For the foregoing reasons, Westchester's motions for partial summary judgment are hereby GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 14, 2008.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

MMI Realty Servs., Inc. v. Westchester Surplus Lines Ins. Co., et al., Civ. No. 07-00466 BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (1) AS TO MOLD COVERAGE AND (2) REGARDING NECESSARY REPAIRS.